ORAMEL H. WATSON *v.* LAWRENCE BRAINARD, JOHN S. ELDRIDGE AND JOHN SMITH, (*deceased.*)

*Assumpsit. Use and occupation.*

Assumpsit for use and occupation will not lie unless there is a contract, express or implied, between the parties, in relation to the occupancy of the premises in question.

But when the holding of possession of the premises is by permission of the owner, an undertaking on the part of the tenant to pay rent may be implied from slight circumstances.

The defendants took possession of a store under a bill of sale, which they held as security for a debt, under the impression that the debt was unpaid, and for the purpose of satisfying it by applying the value of the use of the store thereon. Subsequently the plaintiff, who derived title to the store after the execution of the defendants' bill of sale, applied to the defendants for possession of the store, insisting that their debt, secured by the bill of sale, had been fully paid, but the defendants, not being satisfied of the fact, held possession. One of the defendants, however, told the plaintiff that if it should turn out that the debt had been paid he supposed they should have to pay rent. The defendants then continued in peaceable possession for about two years and a half, and until after this suit was commenced, and it did turn out that their debt had been fully paid before they took possession; *Held,* that these facts tended to show an agreement to pay rent to the plaintiff, in case the defendants debt had been paid, and that the plaintiff was entitled to recover against the defendants in assumpsit for the use and occupation of the store.

ASSUMPSIT for the use and occupation of a store. The case was referred, and it appeared from the referee's report that one Foster built the store in question in the summer and fall of 1849, and that by the advice of the then President of the Vermont Central railroad company, he located it on land owned by that company, near their depot in Waterbury; that about the 10th of

November, 1849, he was indebted to the railroad company in a large sum for freight, and to settle this indebtedness, he gave to the president of the company his promissory note for the amount, payable on demand, together with a common bill of sale of the store as security; that in March, 1850, Foster failed in business, and J. & J. H. Peck & Co., of Burlington, attached the store, with other property, in a suit against Foster, recovered judgment in the suit, and levied execution on the store on the 12th of September 1850, and the store was set off to them in part satisfaction of the execution; that Foster did not redeem the store, and J. & J. H. Peck & Co. conveyed it to the plaintiff and one Fifield, October 26th, 1854, and Fifield, who was but a nominal owner with the plaintiff, soon after conveyed to the latter; that Foster occupied the store until his right of redemption had expired, and others then occupied it until the early part of October, 1854, when the defendants, as the trustees of the first mortgage bondholders of the Vermont Central Railroad Co, who were then running that road, took possession of the store under a claim that Foster's debt, evidenced by the note given in November, 1849, and the bill of sale accompanying it, had never been fully paid.

It further appeared from the referee's report that when the plaintiff and Fifield received the conveyance from the Pecks, the plaintiff called on the defendants and asked possession of the store, and insisted that the Foster debt had been fully paid, but the defendants not being satisfied of that fact, held possession of and used the store and continued to hold it until after this suit was brought, professing their purpose to account for its use on the Foster debt; that the late John Smith, one of the then trustees, told the plaintiff that if the trustees were satisfied that the debt was paid, they would surrender the possession of the store, but they claimed that it was not paid; that they expected to account for the rent on that debt, but if it should turn out that the debt was paid, he supposed they should have to pay rent; that they claimed the right to the possession for the purpose of extinguishing the debt, and that they did not want to keep possession and pay rent.

The referee further found that the conversation with Smith was all the evidence there was in the case as to any contract or agree-

ment between the parties as to rent; also, that the Foster debt was fully paid to the railroad company in 1850; that the use of the store was reasonably worth one hundred and fifty dollars per annum, and that the plaintiff was entitled to recover for the use and occupation of the store, at that rate, from October 26, 1854, to May 4, 1857, the time of the commencement of this action.

The county court at the January Term, 1860,—KELLOGG, J., presiding,—*pro forma* rendered judgment on the report for the plaintiff, for the amount of rent found by the referee, to which the defendants excepted.

*Peck & Colby*, for the defendants.

*P. Dillingham*, for the plaintiff.

ALDIS, J. Assumpsit for use and occupation will not lie unless there is a contract express or implied between the plaintiff and the defendant in regard to the occupancy of the premises. Hence the action fails when one enters and occupies as a wrong doer, or claims to hold adversely to the plaintiff, and by his own right and without any privity with the plaintiff, or enters and holds under a contract to purchase; *Hough* v. *Birge*, 11 Vt. 190; or upon an agreement to procure the title by proceedings *in invitum* under the statute, as in *Stacy* v. *Vermont Central R. R. Co.*, 32 Vt. 551.

In *Chapman* v. *Hoyt and trustee, Smith*, 9 Vt. 153, it is intimated that a mortgagor cannot maintain an action at law against the mortgagee for rents and profits received by him while in possession under his mortgage, even though the mortgage debt has been paid and the mortgagor is equitably entitled to them, but must resort to equity; but the decision did not turn upon that point. In *Strong* v. *Garfield*, 10 Vt. 502, the defendant had sold the plaintiff a lot of land, reserving the right of possession without rent till the 1st of April. He continued in possession after the 1st of April, and the plaintiff's claim was for use and occupation after that time. The plaintiff had also sued in ejectment, and obtained judgment.

The court held that as he had sued in ejectment and got a judgment he could not maintain assumpsit for use and occu-

pation.  But Judge PHELPS says "the plaintiff had his election in the outset to treat the defendant as a tortfeasor, and bring ejectment, or to waive the tort and sue in assumpsit for use and occupation."  This view seems hardly consistent with the general doctrines of the law upon this subject, or with the current of authority.

An express promise need not be shown to sustain the action. When the holding is by the permission of the plaintiff, an implied undertaking to pay rent may be inferred from slight circumstances.

In the case at bar it appears that the defendants entered claiming a right to possess and to apply the rents upon the debt which they claimed to be due from Foster.  In fact nothing was due from Foster.  The plaintiff asked them to give up possession alleging that the debt from Foster had been paid.  But they refused.  If the case stopped at this point we think it would be difficult to sustain the action.  But it further appears that the defendants by one of their number, (Mr. Smith,) told the plaintiff that the Foster debt was not paid, and they expected to account for the rents on the debt, but that if it should turn out that the debt was paid, he supposed they should have to pay rent. After this the defendants remained in the peaceable possession of the premises for about two years and a half.  There was no denial of the plaintiff's title and no unwillingness to pay rent; on the contrary, an avowal of an intent to pay the rent by applying it on the supposed Foster debt.  The only controversy between the parties appears to have been as to the payment of the Foster debt.  The referee finds that it was paid.  We think the plaintiff might have well understood, from the conversation with Smith, that they would pay him the rent if the Foster debt was paid. The subsequent omission to sue the defendants as tortfeasors indicates that the plaintiff regarded it as a conditional promise to pay rent.

This evidence certainly tends to show an agreement to pay the rent to the plaintiff if the Foster debt was paid, and justifies the finding by the referee for the plaintiff to recover.

The judgment is affirmed.